```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**LYLE A. WALES, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 14-2115**

**ARIZONA RV CENTERS LLC, ET AL.**                           **SECTION "B"(3)**

### ORDER AND REASONS

**I.   NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Defendant's, Bank of America, N.A. ("BOA"), Motion to Dismiss the claims asserted in Plaintiffs', Lyle and Judy Wales, Original and Amended Complaints pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  (Rec. Docs. 16, 1, 5, 20). Plaintiffs oppose the instant motion. (Rec. Doc. 21). For the reasons that follow,

**IT IS ORDERED THAT** Defendants' Motion is **DENIED.**

**II. FACTS AND PROCEDURAL HISTORY**

This case arises out of the purchase by Plainitffs of a recreational vehicle ("RV"), to wit a 2013 DUTCHMEN VOLTAGE, VIN 47CFVTV38DC662699 (the "VOLTAGE"). (Rec. Doc. 20 at 3). Plaintiffs purchased the VOLTAGE on September 29, 2012 from Defendant Arizona RV Centers, LLC, a foreign limited liability company with registered agent for service of process in Phoenix, Arizona, and doing business as "Camping World RV Sales"

1

("Camping World"). (Rec. Doc.20 at 2-3). The sales price of the VOLTAGE was $97,858.98, excluding finance charges. (Rec. Doc. 20 at 3). Plaintiffs made a net trade-in in the amount of $9,863.49 and purchased an extended service contract for $6,995.00. *Id.* In order to complete the purchase, Plaintiffs entered into a financing contract for the total transaction amount of $96,408.49. *Id.* The sales contract was thereafter assigned to Defendant BOA for management. *Id.*

Plaintiffs allege in their Second Amended Complaint ("SAC") that, within the first year of the purchase of the VOLTAGE, the RV began to manifest various defective conditions, the particular details of which are immaterial for present purposes. (Rec. Doc. 20 at 4). Plaintiffs further allege that they made repeated attempts to have the manufacturer, Defendant Keystone RV Company, a foreign corporation authorized to do and doing business in the State of Louisiana ("Keystone"), service and repair the defects present in the VOLTAGE. (Rec. Doc. 20 at 1, 5). According to Plaintiffs, many nonconforming and defective conditions were never repaired and the VOLTAGE continues to exhibit various defects to this day. (Rec. Doc. 20 at 5). As a result, Plaintiffs notified Defendants of their desire to rescind the sale, which request was declined, prompting initiation of the instant suit. In the SAC, Plaintiffs allege: (Count 1) Violations of Louisiana Redhibition Laws; (Count 2)

Lender Liability on the part of Defendant BOA; (Count 3) Violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; and (Count 4) Negligent Repair. (Rec. Doc. 20). Plaintiffs seek rescission of the sale, including collateral costs as of the time of sale, finance charges, insurance premiums, maintenance costs, repair costs, as well as applicable penalties and attorney's fees with legal interest from the date of judicial demand, which Plaintiffs allege exceed $100,000.00.

**III. CONTENTIONS OF MOVANT**

BOA argues it is not a proper party to the instant suit in which Plaintiffs bring claims under Louisiana redhibition and negligence laws as well as the federal Magnuson-Moss Warranty Act, because BOA merely provided financing for the transaction at issue. Because these types of claims generally apply instead to sellers and manufacturers of the underlying products, BOA argues these types of claims are not properly asserted against it in its capacity as lender. The salient issue for purposes of the instant motion is whether a clause in the contract of sale, which must be included in this type of consumer contract under federal law, allows the buyer to bring a claim for affirmative relief against the lender in this type of transaction. The clause at issue, commonly referred to as the "FTC Holder Rule," reads:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 CFR § 433.2 (1975). BOA argues this clause does not entitle the buyer to bring affirmative claims against the lender, but instead, merely entitles the buyer to assert the same defenses it would have against a seller against the lender under circumstances where the contract of sale has been assigned to the latter. In other words, the clause operates solely as a shield and not as a sword. This, BOA reasons, is because the FTC Holder Rule was adopted primarily to foreclose the possibility of lenders invoking the "holder-in-due-course doctrine" to enforce the buyer's obligation to pay under a contract of sale even where the seller had breached its duty to perform as promised. In support of this position, BOA cites Federal Trade Commission ("FTC") guidelines explaining the impetus for adopting the rule as well as Louisiana precedent interpreting the rule. BOA further argues that the Louisiana Civil Code articles pertaining to redhibition do not contemplate assertion of that species of claim against non-sellers and non-manufacturers. Finally, BOA argues Plaintiffs have shown no entitlement to cancellation of the financing contract.

**IV. CONTENTIONS OF OPPONENTS**

Plaintiffs respond that the plain language of the FTC Holder Rule clearly reserves to buyers the right to assert "all *claims* and defenses" against lenders which they might enforce against sellers when the lender is the holder of the contract. Thus, Plaintiffs argue, they are entitled to affirmatively assert claims for relief against BOA that they might otherwise assert against the seller and manufacturer of the VOLTAGE. Further, Plaintiffs contend FTC guidelines make it clear that a consumer *can* maintain an affirmative action against a creditor who has received payments, but only where the seller's breach is so substantial that a court is persuaded that rescission and restitution are justified. Plaintiffs acknowledge a split of authority on the application of the Holder Rule in this respect.

Under one approach, courts hold buyers are entitled to affirmative recovery against the lender when there is a substantial breach by the seller warranting rescission or restitution. *See, e.g., Mount v. LaSalle Bank Lake View*, 926 F. Supp. 759, 764 (N.D. Ill. 1996). Under the other approach, courts adhere to the plain language of the Holder Rule and allow any claims the buyer has against the seller to be asserted affirmatively against the lender. *See, e.g., Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1095 (W.D. La. 2000). Because Plaintiff seeks rescission of the underlying

contract, both approaches are presumably satisfied in the instant case. Finally, Plaintiffs argue BOA is a necessary party to the instant action under Fed. R. Civ. P. 19, to the extent that--if Plaintiffs prevail and obtain rescission and restitution of the sales contract--BOA must be joined in order to afford an opportunity for appropriate relief.

**V. MOTION TO DISMISS STANDARD**

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations."

*Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**VI. DISCUSSION**

As noted above, BOA challenges Plaintiffs' right to bring the claims asserted against it in its capacity as lender. As discussed fully below, the Court disagrees with BOA's legal conclusions in this respect.

To begin, the Court looks to the plain language of the clause, which reads: "this consumer credit contract is subject to all **claims and defenses** which the debtor could assert against the seller." *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)("We begin by analyzing the statutory language, assuming that the ordinary

7

meaning of that language accurately expresses the legislative purpose.")(internal quotations omitted). This language unambiguously authorizes affirmative use. *See Maberry v. Said*, 911 F. Supp. 1393, 1402 (D. Kan. 1995)(reaching this same unavoidable conclusion applying a plain language analysis).[1] Further, an examination of the history of the rule and guidelines pertaining thereto released by the FTC further support this interpretation. To be sure, the animating purpose of the promulgation of the rule may well have been to prevent invocation of the holder-in-due-course doctrine by lenders to foreclose the use of defenses by a buyer who had been aggrieved by some breach of the seller. This conclusion is supported by contemporaneous statements of the FTC:

> Our primary concern . . . has been the distribution or allocation of costs occasioned by seller misconduct in credit sale transactions. These costs arise from breaches of contract, breaches of warranty, misrepresentation, and even fraud. The current commercial system which enables sellers and creditors to divorce a consumer's obligation to pay for goods and services from the seller's obligation to perform as promised, allocates all of these costs to the consumer/buyer.

40 Fed. Reg. 53522 (Nov. 18, 1975). Beyond this point, however, Defendants' contentions as to the intent of the FTC are patently

---

[1] We find the analysis applied by the Kansas District Court particularly apt as to this issue and will accordingly refer to that opinion herein.

incorrect. The FTC proceeded to explain the Holder Rule as follows:

> It will require that all consumer credit contracts generated by consumer sales include a provision which allows the consumer to assert his sale-related claims and defenses against any holder of the credit obligation. From the consumer's standpoint, this means that a consumer can (1) defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff, and (2) *maintain an affirmative action against a creditor who has received payments for a return of monies paid on account.* The latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified.

40 Fed.Reg. 53524 (Nov. 18, 1975)(emphasis added). Thus, the FTC clearly contemplated at the time of promulgation that the Rule would authorize affirmative claims against lenders by buyers, subject only to the requirement that any affirmative recovery be limited to the amount of monies paid in and only in the case of an underlying breach warranting rescission. This conclusion is further supported by an advisory opinion released in 2012, following the development of the split of authority referenced above:

> The Commission affirms that the Rule is unambiguous, and its plain language should be applied. No additional limitations on a consumer's right to an affirmative recovery should be read into the Rule, especially since a consumer would not have notice of

> those limitations because they are not included in the credit contract. Had the Commission meant to limit recovery to claims subject to rescission or similar remedy, it would have said so in the text of the Rule and drafted the contractual provision accordingly. It remains the Commission's intent that the plain language of the Rule be applied, which many courts have done.

16 C.F.R. Part 433: Federal Trade Commission Trade Regulation Concerning the Preservation of Consumers' Claims and Defenses (The Holder Rule), Op. F.T.C. (May 3, 2012). While not binding authority, the above is certainly informative as to the FTC's intent concerning the Holder Rule. The history of the rule further reveals that the Commissioner considered and expressly rejected the position advanced by Defendants herein:

> Many industry representatives suggested that the rule be amended so that the consumer may assert his rights only as a matter of defense or setoff against a claim by the assignee or holder. Industry representatives argued that such a limitation would prevent the financier from becoming a guarantor and that any limitation in the extent of a third party's liability was desirable. The practical and policy considerations which militate against such a limitation on affirmative actions by consumers are far more persuasive.

40 Fed. Reg. 53256 (1975)(cited in *Maberry*, *supra*, 911 F. Supp. at 1402).

As the foregoing reveals, Defendant's contentions as to the ability of buyers to assert affirmative claims against lenders under the FTC Holder Rule are contradicted by the plain language

10

and history of the Rule itself. Accordingly, Defendant's claims in this respect are without merit.

The Court is further unpersuaded with regard to Defendant's contentions that the language of the Louisiana Civil Code articles governing the implied warranty against redhibition limit application as between buyers, sellers, and manufacturers. While the Code articles might apply directly only as between such parties, the Holder Rule expressly makes applicable claims "the debtor could assert against the seller of goods." Thus, the articles' reference to buyers and sellers merely serves to emphasize that this type of claim falls under the express coverage of the Holder Rule. The FTC's statements above pertaining to breaches of warranty and "sale-related claims" underscore this point. Defendant's arguments to the contrary are without support in law and find no basis in inferential reasoning.

While the Court concludes that the Holder Rule limits affirmative recovery to circumstances where the seller's breach is so substantial as to warrant rescission, this is precisely the sort of claim brought by Plaintiffs in reliance on Louisiana's law of redhibition in the instant case. As such, there remains no issue as to Plaintiffs' ability to assert this form of claim against Defendants.

**VII. CONCLUSION**

The plain language and history of the FTC Holder Rule expressly permit affirmative claims by buyers against lenders in cases of a substantial breach warranting rescission of the sale. While it remains to be seen whether Plaintiffs will succeed in establishing such a breach, Defendant has failed to show that plaintiffs have not established "a plausible claim for relief" under the applicable Fed. R. Civ. P. 12(b)(6) standards. Accordingly,

**IT IS ORDERED THAT** Defendants' Motion to Dismiss is **DENIED.**

New Orleans, Louisiana, this 9th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE